UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| MARIA L. RODRIGUEZ DE MOSQUEDA and ARMANDO MOSQUEDA RODRIGUEZ, as ADMINISTRATOR OF THE ESTATE OF ESTEBAN MOSQUEDA-ROMERO, | : : : : : : | CIVIL ACTION FILE NO. _____ |
| Plaintiffs, | : : | JURY TRIAL DEMAND |
| vs. | : : | |
| GEORGIA DEPARTMENT OF CORRECTIONS, BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA, GEORGIA REGENTS UNIVERSITY aka AUGUSTA UNIVERSITY, SCOTT CRICKMAR, MONICA HILL, D.O., DEBORAH WRIGHT, L.P.N., DEVIN RADFORD, CHRISTOPHER BRIDGES, JASON BRADDY, MATTHEW BURGESS, COREY DAVIDSON, JACOB McNABB, MICHAEL McCURRY, & ERIC aka PRESTON WHITE, | : : : : : : : : : : | |
| Defendants. | | |

---

## **COMPLAINT**

COMES NOW MARIA L. RODRIGUEZ DE MOSQUEDA, Surviving

*Mosqueda v. Georgia Department of Corrections et al.*

Spouse of ESTEBAN MOSQUEDA-ROMERO, and ARMANDO MOSQUEDA RODRIGUEZ, as EXECUTOR/ADMINISTRATOR OF THE ESTATE OF ESTEBAN MOSQUEDA-ROMERO ("Plaintiffs"), by and through the undersigned counsel of record, and hereby files this Complaint as follows:

## INTRODUCTION

### 1.

According the Eighth and Fourteenth Amendments to the United States Constitution, as well as corresponding provisions of the Georgia Constitution and Georgia Statute, when the decision is made to deprive a person of their liberty there is a duty to provide adequate medical care to such person.  ESTEBAN MOSQUEDA-ROMERO ("Mr. Mosqueda") died on January 3, 2014 because agents of the Georgia Department of Corrections, Georgia Regents University, also known as Augusta University, and/or Board of Regents of the University System of Georgia violated their duty to protect him.  Mr. Mosqueda's death is tragic in part because it was utterly preventable.  He died due to complications arising from diabetic ketoacidosis caused by type II diabetes that went untreated for months.  Diabetic ketoacidosis is rare in type II diabetes sufferers because it is so easy to prevent.  Mr. Mosqueda died because he failed to receive even the

*Mosqueda v. Georgia Department of Corrections et al.*

most basic care for his diabetes even though medical personnel had test results that should have alerted them to his condition months before his death.

2.

This is an action for money damages against the Georgia Department of Corrections, Board of Regents of the University System of Georgia and Georgia Regents University ("State Defendants") brought under the laws of State of Georgia, including but not limited to the Georgia Tort Claims Act, wrongful death and medical malpractice statutes, and an action for money damages against Warden Scott Crickmar of Hays State Prison, Monica Hill, D.O., Deborah Wright, L.P.N., Devin Radford, Christopher Bridges, Jason Braddy, Matthew Burgess, Corey Davidson, Jacob McNabb, Michael McCurry and Eric aka Preston White ("Individual Defendants") pursuant to 42 U.S.C. §§ 1983 and 1988, and the Eighth and Fourteenth Amendments to the United States Constitution and the laws of the United States for their deliberate and deadly indifference to the obvious and serious medical needs of ESTEBAN MOSQUEDA-ROMERO prior to his tragic and avoidable death while in their custody.

3.

On January 3, 2014, Mr. Mosqueda died at the Redmond Regional

Medical Center in Floyd County as a direct and proximate result of the inexcusable misconduct of the Defendants.  Mr. Mosqueda suffered from at least four (4) days of an ongoing untreated, open, obvious and severe medical emergency consisting of vomiting, diarrhea, dehydration and nausea, as well as a reduced and altered level of consciousness, inability to stand, chest pain and escalating pain and suffering prior to the observation of Mr. Mosqueda in near-death condition by Hays State Prison guards on the afternoon of January 2, 2014.

4.

Adding to the tragic nature of these events, Mr. Mosqueda's family had been trying to reach him for days prior to his death in response to his pleas for help and reports that he was not receiving medical care at the prison.  Mr. Mosqueda's son called the prison twice in the week before his father's death and told prison personnel that his father was sick and needed attention.  He was told that his message would be given to the warden.  Mr. Mosqueda's daughter tried to visit Mr. Mosqueda and told prison personnel he needed medical help in the days before his death but was turned away.  She also tried to call her father or reach someone with the prison who would help him get medical attention.  She called again the day before her father's death to inform the warden about Mr.

*Mosqueda v. Georgia Department of Corrections et al.*

Mosqueda's need for help.  When she then returned to the prison on the day before Mr. Mosqueda's death and again asked to see her father they finally sent guards to escort Mr. Mosqueda to visitation, but it was too late.  Correctional officers who were not assigned to guarding and monitoring duty in Mr. Mosqueda's isolation cell block entered Mr. Mosqueda's isolation cell to escort him to visitation but found him in a near death-state.  Mr. Mosqueda never recovered.  Mr. Mosqueda's daughter was not told about her father's condition. She was left waiting and no one in the family was given any information about what happened until after Mr. Mosqueda died the next day.  Even then they were not told how their father died.  The present litigation is the result of the efforts of Mr. Mosqueda's family to find out what happened to their father.

5.

The inexcusable failure of Defendants to provide any assistance or help to Mr. Mosqueda during the at least four (4) days of his ongoing severe medical emergency constitutes the culmination of the reckless, willful and deliberate indifference, constituting more than gross negligence, of Defendants to the ongoing and obviously serious need for medical assessment, care and treatment of the uncontrolled diabetes mellitus from which Mr. Mosqueda suffered and ultimately perished in the early hours of January 3, 2014.

*Mosqueda v. Georgia Department of Corrections et al.*

6.

The Individual Defendants violated Mr. Mosqueda's rights under the Eighth and Fourteenth Amendments to the United States Constitution by depriving him of medical treatment for his serious medical needs and denying Mr. Mosqueda his right to equal protection by failing to make effective communication possible between the Spanish-speaking Mr. Mosqueda and prison personnel regarding his medical condition.  The Individual Defendants are liable for a damages award as a result of such misconduct.

7.

The State Defendants are liable for Mr. Mosqueda's wrongful death under Georgia law pursuant to the Georgia Tort Claims Act, the wrongful death and medical malpractice statutes, negligent supervision, negligent retention, negligent hiring and respondeat superior.

8.

Defendants' deliberate and reckless indifference to Mr. Mosqueda's serious and deteriorating medical condition, as well as Defendants' underlying negligence and recklessness, caused Mr. Mosqueda's untimely and tragic death on January 3, 2014.

*Mosqueda v. Georgia Department of Corrections et al.*

## PARTIES, JURISDICTION AND VENUE

### 9.

Mr. Mosqueda died at 4:54AM on January 3, 2014 in Floyd County in the intensive care unit of Redmond Regional Medical Center.

### 10.

Mr. Mosqueda is survived by his spouse, Maria L. Rodriguez De Mosqueda ("Mrs. Mosqueda").

### 11.

Plaintiff Mrs. Mosqueda holds the statutory rights under O.C.G.A. § 51-4-2 to pursue a wrongful death action regarding Mr. Mosqueda's death as well as standing to pursue claims related to Section 1983.

### 12.

Plaintiff Armando Mosqueda Rodriguez ("Armando Mosqueda") is one of Mr. Mosqueda's sons, is named as executor of the Estate of Esteban Mosqueda-Romero in Mr. Mosqueda's last will and testament and has been appointed as administrator of the Estate of Esteban Mosqueda-Romero and as such Armando Mosqueda is a proper party to prosecute Estate claims.

### 13.

*Mosqueda v. Georgia Department of Corrections et al.*

Defendant Georgia Department of Corrections (hereinafter "GDOC") was created by O.C.G.A. § 42-2-4 and is charged with the duty and responsibility of administering correctional institutions in the State of Georgia pursuant to O.C.G.A. § 42-2-5 and other statutes and authorities and is responsible for medical care at the GDOC facilities within which Mr. Mosqueda was incarcerated such as the Georgia Diagnostic and Classification State Prison ("GDCSP"), Valdosta State Prison, Augusta State Medical Prison, and Hays State Prison.   GDOC is a proper party defendant under O.C.G.A. § 50-21-35 and a summons and complaint shall be served upon the chief executive officer of the GDOC, Commissioner Homer Bryson, at his place of employment, 300 Patrol Road, Forsyth, GA 31029, or wherever he may be found.

14.

Defendant Board of Regents of the University System of Georgia ("Board of Regents") was created by O.C.G.A. § 20-3-20 and is charged with the duty and responsibility of operating and managing the University System, including Georgia Regents University.  The Board of Regents agreed via written contract to provide medical care and treatment at the GDOC facilities within which Mr. Mosqueda was incarcerated such as the GDCSP, Valdosta State Prison, Augusta State Medical Prison and Hays State Prison.   The Board of Regents is a proper

*Mosqueda v. Georgia Department of Corrections et al.*

party defendant under O.C.G.A. § 50-21-35 and a summons and complaint shall be served upon the chief executive officer of the Board of Regents, Chancellor Hank M. Huckaby, at his place of employment, 270 Washington Street, SW, Atlanta, GA 30334, or wherever he may be found.

15.

Defendant Georgia Regents University, also known as Augusta University, ("GRU") is an entity controlled by the Board of Regents and is responsible for medical care and treatment and provided medical care and treatment at the GDOC facilities within which Mr. Mosqueda was incarcerated such as the GDCSP, Valdosta State Prison, Augusta State Medical Prison and Hays State Prison.  The GRU is a proper party defendant under O.C.G.A. § 50-21-35 and a summons and complaint shall be served upon the chief executive officer of the GRU, Brooks A Keel, at his place of employment, 1120 15th Street Augusta, GA 30912, or wherever he may be found.

16.

Defendants GDOC, Board of Regents and GRU are entities subject to the provisions of the Georgia Tort Claims Act.

17.

*Mosqueda v. Georgia Department of Corrections et al.*

Defendants GDOC, Board of Regents and GRU were each provided with statutory ante litem notice on December 31, 2013.

18.

A summons and complaint shall also be served upon the Administrator of the Risk Management Division, Department of Administrative Services, at 200 Piedmont Avenue SE, Suite 1804, West Tower, Atlanta, Georgia 30334-9010. A copy of the summons and complaint showing the date of the filing will also be mailed to the Attorney General for the State of Georgia at 40 Capitol Square, SW, Atlanta, Ga 30334 by certified mail, return receipt requested, in compliance with O.C.G.A. § 50-21-35.

19.

Defendant Scott Crickmar ("Defendant Crickmar"), who was the Warden of Hays State Prison from September 19, 2013 to the present date and as such is responsible for policies and customs created, adopted or employed by personnel at Hays State Prison as well as the training and supervision regarding such policies and customs, may be personally served at his place of employment, 777 Underwood Dr., Trion, GA 30753, or wherever he may be found.

20.

*Mosqueda v. Georgia Department of Corrections et al.*

Defendant Monica Hill, D.O. ("Defendant Hill"), who was a doctor working at Hays State Prison and serving as the Medical Director while Mr. Mosqueda was incarcerated there from September 19, 2013 until his tragic and avoidable death on January 3, 2014 and as Medical Director was responsible for medical care and treatment policies and customs adopted or employed by personnel at Hays State Prison as well as the training and supervision regarding such policies and customs, may be personally served at her place of employment, 777 Underwood Dr, Trion, GA 30753, or wherever she may be found.

21.

Defendant Deborah Wright, L.P.N. ("Defendant Wright"), who was a nurse working at Hays State Prison while Mr. Mosqueda was incarcerated there from September 19, 2013 until his tragic and avoidable death on January 3, 2014, may be personally served at her place of employment, 777 Underwood Dr, Trion, GA 30753, or wherever she may be found.

22.

Defendant Devin Radford, who was a corrections officer working at Hays State Prison while Mr. Mosqueda was incarcerated there from September 19, 2013 until his tragic and avoidable death on January 3, 2014, may be personally

*Mosqueda v. Georgia Department of Corrections et al.*

served at his place of employment, 777 Underwood Dr, Trion, GA 30753, or wherever he may be found.

23.

Defendant Christopher Bridges, who was a corrections officer working at Hays State Prison while Mr. Mosqueda was incarcerated there from September 19, 2013 until his tragic and avoidable death on January 3, 2014, may be personally served at his place of employment, 777 Underwood Dr, Trion, GA 30753, or wherever he may be found.

24.

Defendant Jason Braddy, who was a corrections officer working at Hays State Prison while Mr. Mosqueda was incarcerated there from September 19, 2013 until his tragic and avoidable death on January 3, 2014, may be personally served at his place of employment, 777 Underwood Dr, Trion, GA 30753, or wherever he may be found.

25.

Defendant Matthew Burgess, who was a corrections officer working at Hays State Prison while Mr. Mosqueda was incarcerated there from September 19, 2013 until his tragic and avoidable death on January 3, 2014, may be personally served at his place of employment, 777 Underwood Dr, Trion, GA

*Mosqueda v. Georgia Department of Corrections et al.*

30753, or wherever he may be found.

26.

Defendant Corey Davidson, who was a corrections officer working at Hays State Prison while Mr. Mosqueda was incarcerated there from September 19, 2013 until his tragic and avoidable death on January 3, 2014, may be personally served at his place of employment, 777 Underwood Dr, Trion, GA 30753, or wherever he may be found.

27.

Defendant Jacob McNabb, who was a corrections officer working at Hays State Prison while Mr. Mosqueda was incarcerated there from September 19, 2013 until his tragic and avoidable death on January 3, 2014, may be personally served at his place of employment, 777 Underwood Dr, Trion, GA 30753, or wherever he may be found.

28.

Defendant Michael McCurry, who was a corrections officer working at Hays State Prison while Mr. Mosqueda was incarcerated there from September 19, 2013 until his tragic and avoidable death on January 3, 2014, may be personally served at his place of employment, 777 Underwood Dr, Trion, GA 30753, or wherever he may be found.

29.

Defendant Eric aka Preston White, who was a corrections officer working at Hays State Prison while Mr. Mosqueda was incarcerated there from September 19, 2013 until his tragic and avoidable death on January 3, 2014, may be personally served at his place of employment, 777 Underwood Dr, Trion, GA 30753, or wherever he may be found.

30.

Defendants Radford, Bridges, Braddy, Burgess, Davidson, McNabb, McCurry, and White were each assigned to guard duty or supervision in Hays State Prison isolation unit D-2, where Mr. Mosqueda was imprisoned from December 29, 2013 until January 2, 2014, and are hereinafter collectively referred to as the "Isolation Unit Guards".

31.

Defendants are subject to the personal jurisdiction of this Court.

32.

Subject matter jurisdiction is properly based upon 28 U.S.C. §§1331 and 1343 because Plaintiff is seeking relief under 42 U.S.C. §1983 for violations of his Eighth and Fourteenth Amendment rights. The Court has supplemental

jurisdiction over Plaintiff's state law claims, which arise from the same transactions and occurrences. See 28 U.S.C. §1367.

33.

Venue is proper pursuant to 28 U.S.C. §1391(b) because all Defendants reside in the State of Georgia and a substantial part of the events or omissions giving rise to the claim occurred in Chattooga County, which is within the Rome Division of the Northern District of Georgia.

## **GENERAL FACTS**

34.

On April 4, 2013, Mr. Mosqueda became incarcerated and in the custody of the GDOC and remained in the custody of the GDOC until his death at 4:54AM on January 3, 2014.

35.

Mr. Mosqueda was confined at the Georgia Diagnostic and Classification State Prison ("GDCSP") from April 4, 2013 until June 20, 2013, then Valdosta State Prison from June 20, 2013 until September 19, 2013, with an interlude at Augusta State Medical Prison on June 28-29, 2013, a return to Valdosta State Prison on June 29, 2013, and finally Hays State Prison from September 19, 2013

until his death in the early hours of January 3, 2014.

36.

Mr. Mosqueda was incarcerated and under the custody, control and care of the GDOC starting on April 4, 2013 when Mr. Mosqueda entered GDCSP.

37.

Joseph Fowlkes, M.D. ("Dr. Fowlkes"), was a doctor working at the GDCSP while Mr. Mosqueda was incarcerated there from April 4, 2013 until June 20, 2013.

38.

During the time of his stay at GDCSP, Dr. Fowlkes provided medical services to Mr. Mosqueda on behalf of the Board of Regents and GRU and was in a doctor-patient relationship with Mr. Mosqueda.  Dr. Fowlkes owed a duty to Mr. Mosqueda to exercise the requisite degree of skill and care of a physician in similar circumstances.

39.

Leslie Jarrett, N.P.C. ("Nurse Jarrett"), was a nurse working at the GDCSP while Mr. Mosqueda was incarcerated there from April 4, 2013 until June 20, 2013.

40.

During the time of Mr. Mosqueda's stay at GDCSP, Nurse Jarrett provided medical services to Mr. Mosqueda on behalf of the Board of Regents and GRU and was in a nurse-patient relationship with Mr. Mosqueda. Nurse Jarrett owed a duty to Mr. Mosqueda to exercise the requisite degree of skill and care of a nurse in similar circumstances.

41.

Raymond Moody, D.O. ("Dr. Moody"), was a doctor working at Valdosta State Prison while Mr. Mosqueda was incarcerated there from June 20, 2013 until September 18, 2013.

42.

During the time of Mr. Mosqueda's stay at Valdosta State Prison, Dr. Moody provided medical services to Mr. Mosqueda on behalf of the Board of Regents and GRU and was in a doctor-patient relationship with Mr. Mosqueda. Dr. Moody owed a duty to Mr. Mosqueda to exercise the requisite degree of skill and care of a physician in similar circumstances.

43.

During the time of Mr. Mosqueda's stay at Hays State Prison, Defendant Hill provided medical services to Mr. Mosqueda on behalf of the Board of Regents and GRU and was in a doctor-patient relationship with Mr. Mosqueda.

*Mosqueda v. Georgia Department of Corrections et al.*

Defendant Hill owed a duty to Mr. Mosqueda to exercise the requisite degree of skill and care of a physician in similar circumstances.

44.

During the time of Mr. Mosqueda's stay at Hays State Prison, Defendant Wright provided medical services to Mr. Mosqueda on behalf of the Board of Regents and GRU and was in a nurse-patient relationship with Mr. Mosqueda. Defendant Wright owed a duty to Mr. Mosqueda to exercise the requisite degree of skill and care of a nurse in similar circumstances.

45.

Personnel at GDCSP performed an intake medical examination as well as subsequent medical encounters.

46.

Mr. Mosqueda's fasting plasma glucose levels were measured at GDCSP via blood testing, as 115 mg/dL (April 8, 2013), 178 mg/dL (April 29, 2013), and 118 mg/dL (June 17, 2013) as well as a finger stick glucose test of 191 (April 29, 2013).  Each fasting blood glucose reading on the lab reports is clearly marked in bold print as "H" (meaning high) and the normal range of 65 mg/dL-99 mg/dL is clearly marked on each of the lab result documents showing the FPG test results.

*Mosqueda v. Georgia Department of Corrections et al.*

47.

The April 8, 2013, April 29, 2013, and June 17, 2013 glucose test results were sufficient information upon which to diagnose Mr. Mosqueda with Type II diabetes.

48.

Despite the lab report noting elevated blood glucose Nurse Jarrett checked the "none" box regarding "abnormal lab results" after the April 8, 2013 blood test.

49.

During his stay at GDCSP, the medical records indicate that Mr. Mosqueda exhibited the following symptoms of uncontrolled diabetes mellitus: elevated blood glucose, abnormal light reactions, blurry vision, elevated triglyceride levels, reduction in strength, numbness in face, arms, and in his legs on the right side of his body.

50.

Despite reading and being aware of Mr. Mosqueda's April 8, 2013, April 29, 2013, and June 17, 2013 glucose test results and other diabetes symptoms, Dr. Fowlkes at GDCSP failed to diagnose Mr. Mosqueda with Type II diabetes, order follow up testing, place Mr. Mosqueda in the Chronic Illness Clinic

("CIC") for diabetes mellitus, educate Mr. Mosqueda on proper diet and other means of controlling Type II diabetes or take any other action to provide treatment for Mr. Mosqueda's diabetes based on the elevated blood glucose levels and other diabetes symptoms.

51.

During the period Mr. Mosqueda was in GDOC custody, GDCSP transferred Mr. Mosqueda to Valdosta State Prison (June 20, 2013), Valdosta State Prison transferred Mr. Mosqueda to Augusta State Medical Prison (June 28, 2013), Augusta State Medical Prison transferred Mr. Mosqueda back to Valdosta State Medical Prison (June 29, 2013), and Valdosta State Medical Prison transferred Mr. Mosqueda to Hays State Prison (September 19, 2013) (Mosqueda Transfers")

52.

Each time Mr. Mosqueda was transferred medical personnel at the receiving facility received medical records which included his glucose tests and other diabetes symptoms.

53.

Each of the medical personnel charged with caring for Mr. Mosqueda at the receiving facilities failed to diagnose Mr. Mosqueda with Type II diabetes

*Mosqueda v. Georgia Department of Corrections et al.*

based on the elevated blood glucose levels in Mr. Mosqueda's medical records shown by the April 8, 2013, April 29, 2013, and June 17, 2013 glucose tests and other diabetes symptoms.

54.

Each of the medical personnel charged with caring for Mr. Mosqueda at the receiving facilities failed to order follow up testing, including but not limited to Hb1Ac testing, based on the elevated blood glucose levels in Mr. Mosqueda's medical records shown by the April 8, 2013, April 29, 2013, and June 17, 2013 glucose tests and other diabetes symptoms.

55.

Each of the medical personnel charged with caring for Mr. Mosqueda at the receiving facilities failed to take other action to provide treatment for Mr. Mosqueda's diabetes based on the April 8, 2013, April 29, 2013, and June 17, 2013 glucose tests and other diabetes symptoms.

56.

Each of the medical personnel charged with caring for Mr. Mosqueda at the receiving facilities failed to place Mr. Mosqueda in the Chronic Illness Clinic ("CIC") for diabetes mellitus based on the April 8, 2013, April 29, 2013, and June 17, 2013 glucose tests and other diabetes symptoms.

57.

Each of the medical personnel charged with caring for Mr. Mosqueda at the receiving facilities failed to educate Mr. Mosqueda on proper diet and other means of controlling Type II diabetes based on the April 8, 2013, April 29, 2013, and June 17, 2013 glucose tests and other diabetes symptoms.

58.

The conduct and operations of the Individual Defendants was governed in part during the period Mr. Mosqueda was in GDOC custody by Standard Operating Procedures ("SOPs").

59.

Each and every one of the doctors named herein who provided medical services to Mr. Mosqueda, Dr. Fowlkes, Dr. Moody and Defendant Hill failed to follow and instead violated prison SOPs by failing to place Mr. Mosqueda in the diabetes CIC.

60.

Dr. Fowlkes failed to exercise the requisite degree of skill and care and violated his duty to Mr. Mosqueda by failing to diagnose Mr. Mosqueda with type II diabetes after the 178 mg/dL "H" result from the April 29, 2013 fasting glucose interval test.

*Mosqueda v. Georgia Department of Corrections et al.*

61.

The results of the April 29, 2013 fasting glucose test were over 40% higher than the American Diabetes Association's ("ADA") criteria for diagnosis of diabetes, which instructs that a fasting blood glucose test of 126 mg/dL may be sufficient to diagnose a patient with type II diabetes.

62.

Dr. Fowlkes failed to exercise the requisite degree of skill and care and violated his duty to Mr. Mosqueda by failing to order follow-up, next day blood glucose testing, including but not limited to a Hb1Ac test, for Mr. Mosqueda after the 178 mg/dL "H" result from the April 29, 2013 fasting glucose interval test (over 40% higher than the ADA's criteria for diagnosis of diabetes of 126 mg/dL) and the concurrent numbness in Mr. Mosqueda's right side of his body including his face, hands, and feet as noted in the medical records from that same day and other concurrent symptoms of diabetes mellitus.

63.

Dr. Fowlkes failed to exercise the requisite degree of skill and care and violated his duty to Mr. Mosqueda by failing to order follow-up, next day blood glucose testing, including but not limited to a Hb1Ac test, for Mr. Mosqueda after the 115 mg/dL "H" result from the April 8, 2013 fasting glucose interval

*Mosqueda v. Georgia Department of Corrections et al.*

test and the concurrent additional symptoms of diabetes mellitus.

64.

Dr. Fowlkes failed to exercise the requisite degree of skill and care and violated his duty to Mr. Mosqueda by failing to order follow-up, next day blood glucose testing, including but not limited to a Hb1Ac test, for Mr. Mosqueda after the 118 mg/dL "H" result from the June 17, 2013 fasting glucose interval test and the concurrent additional symptoms of diabetes mellitus.

65.

Each of the medical personnel charged with caring for Mr. Mosqueda failed to exercise the requisite degree of skill and care and violated their duty to Mr. Mosqueda by failing to diagnose Mr. Mosqueda with type II diabetes in light of the glucose tests and diabetes symptoms noted in Mr. Mosqueda's medical records at the time of his transfers between prisons.

66.

Each of the medical personnel charged with caring for Mr. Mosqueda failed to exercise the requisite degree of skill and care and violated their duty to Mr. Mosqueda by failing to order follow-up blood glucose testing, including but not limited to a Hb1Ac test, for Mr. Mosqueda in light of the glucose tests and diabetes symptoms noted in Mr. Mosqueda's medical records at the time of his

transfers between prisons.

67.

Each of the medical personnel charged with caring for Mr. Mosqueda violated prison standard operating procedures by failing to take action based on the elevated blood glucose levels and other diabetes symptoms in Mr. Mosqueda's medical records.

68.

Each of the medical personnel charged with caring for Mr. Mosqueda violated prison standard operating procedures regarding the transfer and receipt of inmates by failing to diagnose Mr. Mosqueda with diabetes mellitus or at least prediabetes upon the required review of by each transferring or receiving facility of the inmate's medical records to determine the existence of any chronic conditions, such as diabetes mellitus.

69.

All nurses or doctors or other Hays State Prison medical personnel who engaged in or reviewed the results of any rounds or sick call at cell block D-2 or other monitoring of D-2 inmates failed to follow and instead violated prison SOPs by ignoring and failing and refusing to treat Mr. Mosqueda's obvious medical emergency from at least December 29, 2013 until January 2, 2014, and

*Mosqueda v. Georgia Department of Corrections et al.*

previous to December 29, 2013 as the evidence may show, despite the open and obvious signs of extreme emergency medical distress which any observer of Mr. Mosqueda could see for multiple days and prior to December 29, 2013 as the evidence may show.

70.

The violations of prison SOPs by the medical personnel charged with caring for Mr. Mosqueda evidence the medical malpractice and recklessness of the medical personnel charged with caring for Mr. Mosqueda as well as the deliberate indifference of Defendant Hill and Defendant Wright to the serious medical needs of Mr. Mosqueda.

71.

Mr. Mosqueda contacted his family numerous times during his time in GDOC custody with complaints that he was sick but was not receiving any medical care.

72.

It is believed that further discovery will show that starting between December 28 and 30, 2013, Mr. Mosqueda exhibited obvious and life-threatening medical symptoms of severe dehydration, nausea, vomiting, and diarrhea as well as a loss of strength, inability to stand, a rapidly deteriorating

*Mosqueda v. Georgia Department of Corrections et al.*

physical condition overall, chest pain and a reduced level of consciousness.

73.

It is believed that further discovery will show that from the time the serious nature of Mr. Mosqueda's medical symptoms became obviously apparent he received no medical attention for between 72 and 120 hours.

74.

Mr. Mosqueda made requests for medical help in the days immediately prior to his death that were ignored by the Isolation Unit Guards.

75.

Some of Mr. Mosqueda's requests for medical help in the days immediately prior to his death were ignored because the Isolation Unit Guards and other employees of Hays State Prison lacked the ability to communicate with Mr. Mosqueda in Spanish even though it was known that Mr. Mosqueda communicated in Spanish.

76.

Because his requests for medical attention were being ignored by the Defendants named herein Mr. Mosqueda contacted his family for help.

77.

In response to Mr. Mosqueda's pleas for help his family made numerous

*Mosqueda v. Georgia Department of Corrections et al.*

attempts to communicate with Defendant Crickmar and other employees at Hays State Prison in order to request medical attention for Mr. Mosqueda.

78.

Armando Mosqueda called the prison twice in the week before his father's death and told prison personnel that his father was seriously ill and needed immediate medical attention.  Armando Mosqueda was told that his message would be given to the warden.

79.

Mr. Mosqueda's daughter tried to visit Mr. Mosqueda and told prison personnel he was seriously ill and needed medical help in the days before his death but was turned away.  She also tried to call her father or reach someone with the prison who would help him get medical attention.  She called again the day before her father's death to inform the Defendant Crickmar about Mr. Mosqueda's need for immediate medical attention.  She then returned to the prison on the day before Mr. Mosqueda's death in another attempt to check on his well-being.

80.

After several days of severe and obvious distress Mr. Mosqueda was finally seen by a nurse on January 2, 2014 at 11:20AM.

*Mosqueda v. Georgia Department of Corrections et al.*

81.

Defendant Wright documented that Mr. Mosqueda had a pulse rate of 140 (indicia of sinus tachycardia) as well as dehydration, weakness, reported inability to stand, nausea and prolonged vomiting.

82.

After meeting with Mr. Mosqueda Defendant Wright noted that his situation was urgent and required a referral for further care.

83.

Records indicate that two unsuccessful attempts were made to contact by phone Dr. Monica Hill ("Defendant Hill"), the medical director at Hays State Prison.

84.

Despite observing Mr. Mosqueda's obvious and serious medical distress Defendant Wright failed to contact emergency medical personnel and failed to take action to have Mr. Mosqueda hospitalized.

85.

Instead of treating Mr. Mosqueda Defendant Wright returned Mr. Mosqueda to his isolation cell.  Defendant Wright noted that Mr. Mosqueda had been instructed he needed to submit a sick call form if he had further problems.

*Mosqueda v. Georgia Department of Corrections et al.*

Defendant Wright was aware when she made this instruction that Mr. Mosqueda was unable to communicate with prison personnel without an interpreter.

86.

Defendant Wright violated prison policy and disrupted her ability to communicate with Mr. Mosqueda by using an inmate as an interpreter during her medical consultation with Mr. Mosqueda.

87.

Despite knowing that there were no prison personnel who could serve the function appropriately and knowing Mr. Mosqueda lacked the ability to communicate directly with any of the prison personnel he interacted with, Defendant Wright instructed that Mr. Mosqueda have an interpreter help translate his information.

88.

Approximately two to three hours later, on January 2, 2013 at approximately 2:30 P.M., Mr. Mosqueda was found in an unstable and near-death state in his cell by correctional officers who were not normally assigned to monitor or guard Mr. Mosqueda.

89.

Mr. Mosqueda was found when officers attempted to escort him to a visit

*Mosqueda v. Georgia Department of Corrections et al.*

with his daughter.

90.

At approximately 3:00 P.M. on January 2, 2014, a glucose test was performed on Mr. Mosqueda for the first time since June 17, 2013.

91.

The January 2, 2014 glucose test resulted only in a "HI" reading, meaning that Mr. Mosqueda's blood glucose levels were so high that they could not be read by the medical testing device.

92.

A test of blood taken from Mr. Mosqueda on January 2, 2014 showed glucose levels of 1700mg/dL.

93.

At approximately 3:30 P.M. on January 2, 2014 another unsuccessful attempt was made to contact Defendant Hill.  Ultimately Dr. Cochran was contacted via phone and authorized Mr. Mosqueda's transfer to Redmond Regional Medical Center.

94.

Emergency medical services personnel arrived via ambulance at Hays State Prison and noted that Mr. Mosqueda was exhibiting tachycardia and the

*Mosqueda v. Georgia Department of Corrections et al.*

emergency medical services personnel were also unable to measure Mr. Mosqueda's blood glucose as the test resulted only in a "HIGH" reading, meaning that Mr. Mosqueda's blood glucose level was so high that it was beyond the range of the testing capacity of the testing device.

95.

At approximately 4:10 P.M., Mr. Mosqueda arrived at Redmond Regional Medical Center and was taken to the emergency room ("ER") and subsequently admitted to the Intensive Care Unit ("ICU").

96.

The ER personnel at Redmond Regional Medical Center noted in records that Mr. Mosqueda was in "acute diabetic ketoacidosis" and his body was in life-threatening shock in relation to his extreme dehydration.

97.

Mr. Mosqueda's glucose levels were measured at Redmond via blood testing, as 1472 mg/dL (4:50 P.M. on January 2, 2014), 1035 mg/dL (7:50 P.M. on January 2, 2014), 617 mg/dL (11:19 P.M. on January 2, 2014) and 394 mg/dL (12:39 A.M. on January 3, 2014).

98.

At approximately 12:50 A.M. on January 3, 2014, Mr. Mosqueda's heart

*Mosqueda v. Georgia Department of Corrections et al.*

stopped and a code was called.  Mr. Mosqueda was revived by Redmond medical personnel utilizing CPR, then at 2:35 A.M. and 3:45 A.M. Mr. Mosqueda's heart stopped a second and third time and he was revived each time via CPR.

99.

At 4:50 A.M., Mr. Mosqueda's heart stopped for fourth time and he could not be revived.  Mr. Mosqueda was pronounced dead at 4:54 A.M. on January 3, 2014.

100.

Redmond Regional Medical Center personnel noted that Hays State Prison guards and nurses stated that no contact information was available for Mr. Mosqueda's family in response to multiple requests for same from Redmond medical personnel.

101.

On January 3, 2014 at approximately 8:35 A.M., Defendant Hill filled out the Inmate Death Notification Form and in such form stated that the suspected cause of death of Mr. Mosqueda was "diabetes ketoacidosis" from "new onset diabetes".

102.

*Mosqueda v. Georgia Department of Corrections et al.*

On January 3, 2014 at approximately 8:45 A.M. Defendant Hill filled out several Consultation Request forms requesting medical services from outsider providers for Mr. Mosqueda, who was dead at the time of the creation of such documents.

103.

Mr. Mosqueda's death was initially called a suicide by Defendant Crickmar and agents of the GDOC.  A search of Mr. Mosqueda's cell carried out after his death found what was initially called a "suicide note".  It was noted by GDOC investigators that the note indicated that Mr. Mosqueda had taken a large number of aspirin in the hours before his death.

104.

Subsequent translation of the note found in Mr. Mosqueda's cell revealed that it was actually a written request for medical attention.   As with Mr. Mosqueda's other requests for medical attention, it went unanswered.

105.

A review of the events leading up to Mr. Mosqueda's death was carried out by Defendant Hill.

106.

Defendant Hill noted that she spoke with an inmate in a cell near Mr.

*Mosqueda v. Georgia Department of Corrections et al.*

Mosqueda's who overheard Mr. Mosqueda vomiting for four (4) or five (5) days prior to his death.

107.

Defendant Hill concluded that Mr. Mosqueda's death was avoidable. She stated that "All physicians including myself failed to address the hyperglycemia noted in 3 CMPS. We did not diagnose type II DM. Additionally, this patient did not speak English and was housed in tier 1 (segregation) and this hampered communication. Clearly, this pt [sic] had been ill for longer than two days as a blood glucose of 1700 and the degree of hypovolemia are inconsistent with the time course. There likely was an acute illness such as an infection which exacerbated the progression of his type II DM. This death could have been prevented if we had diagnosed his diabetes in a timely fashion."

108.

Despite the conclusion of Defendant Hill that Mr. Mosqueda's death was avoidable Defendant Crickmar has found that the incident resulting in Mr. Mosqueda's death was handled appropriately and has endorsed and ratified the behavior of the Isolation Unit Guards and other medical personnel at Hays State Prison that led to Mr. Mosqueda's death.

109.

*Mosqueda v. Georgia Department of Corrections et al.*

Dr. Fowlkes, Dr. Moody, Nurse Jarrett, Defendant Hill and Defendant Wright ("Mosqueda Medical Personnel") were all employees of the GDOC, Board of Regents, and/or GRU at the time of their provision of medical services to Mr. Mosqueda.

110.

At all times relevant hereto, the acts and omissions of Dr. Fowlkes, Dr. Moody, Nurse Jarrett, Defendant Hill and Defendant Wright related to the medical treatment and care of Mr. Mosqueda were committed within the scope of their employment with the State Defendants.

111.

The State Defendants are vicariously liable, via respondeat superior, for any negligent acts and omissions, including but not limited to medical malpractice and wrongful death, of the Mosqueda Medical Personnel committed within the scope of their employment with the State Defendants.

112.

The GDOC employed the Isolation Unit Guards and Defendant Crickmar at all times relevant hereto.

113.

The Isolation Unit Guards were all employees of the GDOC during the

*Mosqueda v. Georgia Department of Corrections et al.*

time Mr. Mosqueda was housed at Hays State Prison up until his death.

114.

Defendant Crickmar was an employee of the GDOC during the time Mr. Mosqueda was housed at Hays State Prison up until his death.

115.

At all times relevant hereto, the acts and omissions of the Isolation Unit Guards related to the guarding and monitoring and care of Mr. Mosqueda were committed within the scope of the Isolation Unit Guards' employment with the GDOC.

116.

The GDOC is vicariously liable, via respondeat superior, for any negligent acts and omissions, including but not limited to wrongful death under Georgia law, of the Isolation Unit Guards and Defendant Crickmar committed within the scope of their employment with the GDOC.

117.

Prior to the time of Mr. Mosqueda's death, other inmates in the custody and control of Hays State Prison died or suffered serious injury as a result of uncontrolled diabetes mellitus.

118.

*Mosqueda v. Georgia Department of Corrections et al.*

Prior to the time of Mr. Mosqueda's death, other inmates in the custody and control of the GDOC died or suffered serious injury as a result of uncontrolled diabetes mellitus.

119.

Prior to the time of Mr. Mosqueda's death, other inmates under the medical care of the Board died or suffered serious injury as a result of uncontrolled diabetes mellitus.

120.

Prior to the time of Mr. Mosqueda's death, other inmates under the medical care of the GRU died or suffered serious injury as a result of uncontrolled diabetes mellitus.

121.

Prior to the time of Mr. Mosqueda's death, the State Defendants had prior notice that other inmates in the custody and control of the GDOC died or suffered serious injury as a result of uncontrolled diabetes mellitus.

122.

Prior to the time of Mr. Mosqueda's death, other inmates in the custody and control of Hays State Prison died or suffered serious injury as a result of untreated emergency medical conditions.

*Mosqueda v. Georgia Department of Corrections et al.*

123.

Prior to the time of Mr. Mosqueda's death, other inmates in the custody and control of the GDOC died or suffered serious injury as a result of untreated emergency medical conditions.

124.

Prior to the time of Mr. Mosqueda's death, other inmates under the medical care of the Board died or suffered serious injury as a result of untreated emergency medical conditions.

125.

Prior to the time of Mr. Mosqueda's death, other inmates under the medical care of the GRU died or suffered serious injury as a result of untreated emergency medical conditions.

126.

Prior to the time of Mr. Mosqueda's death, the State Defendants had prior notice that other inmates in the custody and control of the GDOC died or suffered serious injury as a result of untreated emergency medical conditions.

127.

Defendant Crickmar was responsible for the hiring, training and supervision of all personnel working at Hays State Prison from September 19,

*Mosqueda v. Georgia Department of Corrections et al.*

2013 until January 3, 2014 and thereafter until the filing of this Complaint and was responsible for promulgating and implementing policies and procedures, as well as performing training and supervision of Hays State Prison personnel regarding such policies and procedures, for all Hays State Prison personnel during the period Mr. Mosqueda was held at Hays State Prison.

128.

Defendant Hill was responsible for the hiring, training and supervision of all medical personnel working at Hays State Prison from September 19, 2013 until January 3, 2014 and was responsible for promulgating and implementing policies and procedures, as well as performing training and supervision of Hays State Prison personnel regarding such policies and procedures, for the medical team at Hays State Prison during the period Mr. Mosqueda was held at Hays State Prison.

129.

Prior to the time of Mr. Mosqueda's death, the Individual Defendants had prior notice that other inmates in the custody and control of the GDOC died or suffered serious injury as a result of uncontrolled diabetes mellitus.

130.

Prior to the time of Mr. Mosqueda's death, the Individual Defendants had
*Mosqueda v. Georgia Department of Corrections et al.*

prior notice that other inmates in the custody and control of the GDOC died or suffered serious injury as a result of untreated emergency medical conditions.

131.

During the eighteen (18) months before the time of Mr. Mosqueda's death, at least five (5) inmates died while incarcerated at Hays State Prison and the prior warden had been removed from his position.

132.

During the six (6) months before the time of Mr. Mosqueda's death, Hays State Prison allowed the physical condition of at least 11 inmates to deteriorate enough such that they were transported to a local hospital.

133.

Prior to the time of Mr. Mosqueda's death, Defendant Crickmar failed to implement policies and/or procedures at Hays State Prison obviously required to protect Plaintiff's constitutional right to be free from deliberate indifference to his serious medical needs, including but not limited to the serious medical need for care, treatment and diagnosis for the obvious and uncontrolled diabetes mellitus which killed Mr. Mosqueda.

134.

Prior to the time of Mr. Mosqueda's death, Defendant Crickmar failed to
*Mosqueda v. Georgia Department of Corrections et al.*

implement policies and/or procedures at Hays State Prison required to protect Plaintiff's constitutional right to equal protection of the laws of the United States of America by failing to provide for Spanish speaking medical personnel or interpreters to allow communication between inmates who speak Spanish, such as Mr. Mosqueda, and medical and correctional personnel at Hays State Prison.

135.

The inability of medical personnel to functionally communicate with Mr. Mosqueda prevented medical personnel at GDOC facilities from providing the constitutionally required level of medical care and treatment to Mr. Mosqueda and was a proximate cause of his steadily escalating pain, suffering and ultimately his death.

136.

An example of the inability of personnel at Hays State Prison to effectively communicate with Mr. Mosqueda is the mistranslation of the note found in Mr. Mosqueda's cell after his death.  The note was a request for medical care by Mr. Mosqueda.  However, during the investigation into Mr. Mosqueda's death personnel at Hays State Prison stated that the note indicated Mr. Mosqueda's intent to commit suicide by taking large numbers of aspirin.

137.

*Mosqueda v. Georgia Department of Corrections et al.*

Prior to the time of Mr. Mosqueda's death, Defendant Hill failed to implement policies and/or procedures at Hays State Prison required to protect Plaintiff's constitutional right to equal protection of the laws of the United States of America by failing to provide for interpreters to allow communication between inmates who speak Spanish, such as Mr. Mosqueda, and medical personnel at Hays State Prison.

138.

Prior to the time of Mr. Mosqueda's death, Defendant Crickmar failed to implement policies and/or procedures at Hays State Prison required to allow for even minimally effective medical treatment and care to occur by failing to provide for interpreters to allow communication between inmates who speak Spanish, such as Mr. Mosqueda, and medical and correctional personnel at Hays State Prison.

139.

Prior to the time of Mr. Mosqueda's death, Defendant Hill failed to implement policies and/or procedures at Hays State Prison obviously required to allow for even minimally effective medical treatment and care to occur by failing to provide for interpreters to allow communication between inmates who speak Spanish, such as Mr. Mosqueda, and medical personnel at Hays State Prison.

*Mosqueda v. Georgia Department of Corrections et al.*

140.

Prior to the time of Mr. Mosqueda's death, Defendant Crickmar's policies and procedures at Hays State Prison failed to require that inmates who exhibited medical emergencies receive immediate emergency care including transport to a hospital emergency room or other outside facility qualified to provide emergency treatment and Defendant Crickmar recklessly failed to train and supervise Hays State Prison personnel to the extent any such policy or procedure existed.

141.

Prior to the time of Mr. Mosqueda's death, Defendant Crickmar's policies and procedures at Hays State Prison failed to properly require that the Isolation Unit Guards observe and monitor inmates in isolation for emergency medical conditions and Defendant Crickmar recklessly failed to train and supervise Hays State Prison personnel to the extent any such policy or procedure existed.

142.

Prior to the time of Mr. Mosqueda's death, Defendant Crickmar's policies and procedures failed to provide Isolation Unit Guards with appropriate and necessary training or supervision regarding diabetes mellitus in inmates and further failed to provide appropriate training or supervision regarding the appropriate response to the identification of an inmate in isolation exhibiting

*Mosqueda v. Georgia Department of Corrections et al.*

symptoms of uncontrolled diabetes mellitus.

143.

Prior to the time of Mr. Mosqueda's death, Defendant Crickmar's policies and procedures failed to provide Isolation Unit Guards with appropriate and necessary training or supervision regarding identification of metabolic instability and/or extreme dehydration in inmates and further failed to provide appropriate training or supervision regarding the appropriate response to the identification of hyperglycemia in an inmate in isolation.

144.

Prior to the time of Mr. Mosqueda's death, Defendant Crickmar's policies and procedures failed to provide Isolation Unit Guards with appropriate and necessary training or supervision regarding the need to obtain immediate medical assistance, including assistance from third party emergency medical responders, to inmates in isolation undergoing medical emergencies.

145.

Prior to the time of Mr. Mosqueda's death, Defendant Crickmar failed to provide or sufficiently maintain physical facilities, and provide policies and procedures that would provide the ability for inmates in isolation cells to communicate the need for emergency medical assistance to guards or medical

*Mosqueda v. Georgia Department of Corrections et al.*

personnel.

146.

Prior to the time of Mr. Mosqueda's death, Defendant Crickmar was aware of the substantial dangers of the failure to maintain physical facilities, and provide policies and procedures that would provide the ability for inmates in isolation cells to communicate the need for emergency medical assistance to guards or medical personnel.

147.

Prior to the time of Mr. Mosqueda's death, Defendant Crickmar was aware of the substantial dangers of the failure to monitor inmates in isolation cells and detect emergency medical conditions and the obvious need for improved policies and procedures regarding same by virtue of prior incidents of deaths or serious injury of inmates with emergency medical conditions at Hays State Prison and Defendant Crickmar's prior years of experience and expertise in the correctional field.

148.

Prior to the time of Mr. Mosqueda's death, Defendant Crickmar was also aware of the substantial dangers of the failure to monitor inmates in isolation and detect emergency medical conditions and the obvious need for improved policies

*Mosqueda v. Georgia Department of Corrections et al.*

and procedures regarding same by virtue of Defendant Crickmar's attendance at and speaking engagements with various law enforcement, academic and other workshops, conferences or other gatherings.

149.

Prior to the time of Mr. Mosqueda's death, Defendant Crickmar was also aware of the substantial dangers of uncontrolled diabetes mellitus amongst inmates and the need for improved policies and procedures regarding same by virtue of prior incidents of deaths or serious injury of inmates with uncontrolled diabetes mellitus at Hays State Prison and Defendant Crickmar's prior years of experience and expertise in the correctional field.

150.

Prior to the time of Mr. Mosqueda's death, Defendant Crickmar was aware of the substantial dangers of uncontrolled diabetes mellitus and the obvious need for improved policies and procedures regarding same by virtue of Defendant Crickmar's attendance at and speaking engagements with various law enforcement, academic and other workshops, conferences or other gatherings.

151.

Prior to the time of Mr. Mosqueda's death, Defendant Crickmar was aware of the specific, obvious need for improved policies and procedures to protect the

*Mosqueda v. Georgia Department of Corrections et al.*

right of inmates at Hays State Prison to be free of deliberate indifference to their serious medical needs.

152.

Defendant Crickmar's reckless and obviously inappropriate policies and procedures and supervision and training related to the protection of the constitutional rights of Hays State Prison inmates to be free from deliberate indifference to their serious medical needs, including uncontrolled diabetes mellitus and emergency, life threatening medical conditions, were a moving force and a proximate cause of the death of Mr. Mosqueda, evidencing the deliberate indifference of all Defendants to such constitutional violations.

153.

Prior to the time of Mr. Mosqueda's death, Defendant Crickmar was aware or had substantial knowledge that the employees working at Hays State Prison in correctional or medical jobs were severely strained because of understaffing and underfunding of Hays State Prison operations, that high turnover was another result of the understaffing and underfunding, and that high turnover results in a less well-trained and capable Hays State Prison workforce.

154.

The many deaths of Hays State Prison inmates in the several years before *Mosqueda v. Georgia Department of Corrections et al.*

the time of Mr. Mosqueda's death, as well as the failures to take any remedial action to improve or otherwise remedy the obviously reckless and inadequate policies and procedures which allowed such ongoing and pervasive wrongful conduct to occur, demonstrate a prison that is out of control and a death trap to inmates, evidencing an ongoing pattern of substantial wrongdoing by Hays State Prison personnel, including constitutional violations incurred by inmates at Hays State Prison as a result of such wrongdoing.

### 155.

Prior to the time of Mr. Mosqueda's death, Hays State Prison was understaffed and underfunded.

### 156.

Prior to the time of Mr. Mosqueda's death, the guard shortage at Hays State Prison was acute, and from July 2013 through November 2013, Hays State Prison averaged a 17.5 percent vacancy rate among correctional officers, according to monthly reports sent to the Department of Corrections. From July 2013 through October 2013 alone, the prison paid out nearly $700,000 in overtime.

### 157.

The guard shortage and strain of continuous increased working hours put

*Mosqueda v. Georgia Department of Corrections et al.*

unreasonable, open and obvious strain upon Hays State Prison personnel, reducing the effectiveness of Hays State Prison personnel and the proper functioning of and compliance with SOPs.

158.

Prior to the time of Mr. Mosqueda's death, Defendant Crickmar was aware that Hays State Prison was understaffed and underfunded and that such underfunding and understaffing was creating the highly predictable consequence of constitutional violations regarding the supervision, care and treatment of the inmates at Hays State Prison.

159.

Prior to the time of Mr. Mosqueda's death, Defendant Crickmar took no substantive action to remedy the understaffed and underfunded status of Hays State Prison.

160.

Prior to the time of Mr. Mosqueda's death, Defendant Hill, who was responsible for the creation, maintenance and compliance with all medical care and treatment policies and procedures at Hays State Prison, was aware that the Hays State Prison medical team was understaffed and underfunded and that such underfunding and understaffing was creating the highly predictable consequence

*Mosqueda v. Georgia Department of Corrections et al.*

of constitutional violations regarding the medical treatment, supervision and care of the inmates at Hays State Prison.

161.

Prior to the time of Mr. Mosqueda's death, Defendant Hill took no substantive action to remedy the understaffed and underfunded status of the Hays State Prison medical team.

162.

As a direct and proximate result of said acts and omissions of Defendants, the Plaintiffs incurred the following injuries and damages:

a.  Wrongful death of Esteban Mosqueda-Romero;

b.  Substantial mental suffering and trauma endured by Mr. Mosqueda, including but not limited to the fear, anxiety, frustration and sheer terror of being unable to obtain life-saving medical care and treatment for an extended period of time prior to a slow and painful death which included many clinical deaths and resuscitations;

c.  Mr. Mosqueda's endured physical pain, suffering and substantial and horrific physical deterioration prior to death due to the inexcusable deliberate indifference to Mr. Mosqueda's clearly and obviously deteriorating physical condition;

*Mosqueda v. Georgia Department of Corrections et al.*

     d.  Loss of the full value of Mr. Mosqueda's life.

163.

The actions of Defendants during the period Mr. Mosqueda was in GDOC custody violated the following clearly established and well settled federal constitutional rights of Mr. Mosqueda:

     a.  His right to be free from cruel and unusual punishment, including the right to be free from deliberate indifference to his serious medical needs;

     b.  His right to equal protection under the laws of the United States.

164.

All State parties have been served with proper ante litem notice, and the State Defendants' sovereign immunity has been (to the extent such sovereign immunity exists) waived pursuant to Article Two of Chapter 21 of Title 50 of the Georgia Code and/or other relevant statutes up to one (1) million dollars per Plaintiff and three (3) million dollars total per incident, with certain likely applicable exceptions to such liability limitations as the evidence will show.

165.

Plaintiffs are entitled to recover monetary damages in excess of $10,000.00, in an amount to be proven at trial, for the mental and physical

*Mosqueda v. Georgia Department of Corrections et al.*

bodily injury to Mr. Mosqueda, culminating in his death, caused by the failure to treat or diagnose his diabetes mellitus while he was incarcerated by the GDOC. The damages Plaintiffs are entitled to recover include all pain and suffering incurred by Mr. Mosqueda related to Defendants' misconduct prior to the time of Mr. Mosqueda's death (Estate claims), and the full value of Mr. Mosqueda's life (Mrs. Mosqueda's claims) as his untimely death was proximately caused by Defendants' misconduct.

166.

All conditions precedent to the bringing of this action and Plaintiffs' right to the relief sought herein have occurred, have been performed, or have been excused.

## <u>COUNT I – WRONGFUL DEATH & MEDICAL MALPRACTICE</u> <u>(AGAINST THE STATE DEFENDANTS ONLY)</u>

167.

Plaintiffs re-allege and incorporate herein by reference Paragraphs One (1) through One Hundred and Sixty-Six (166) as if fully set forth herein.

168.

The doctors treating Mr. Mosqueda all had a physician-patient relationship with Mr. Mosqueda and each and every one of them had a duty to

*Mosqueda v. Georgia Department of Corrections et al.*

Page **53** of **97**

provide medical services, monitoring and care in a manner expected of an ordinary doctor in like or similar circumstances.

169.

Nurse Jarrett and Defendant Wright had a professional nurse-patient relationship with Mr. Mosqueda and both of them had a duty to provide medical services, monitoring and care in a manner expected of an ordinary nurse in like or similar circumstances.

170.

Dr. Fowlkes departed from the standard of care in the care and treatment of Mr. Mosqueda by failing to diagnose Mr. Mosqueda with diabetes mellitus during his stay at GDCSP based on the clinical evidence available and known to him, including several elevated blood glucose tests, the April 29, 2013 FPG of 178 mg/dL, along with the other substantial physical symptoms of diabetes mellitus noted by Dr. Fowlkes.

171.

Dr. Fowlkes departed from the standard of care in the care and treatment of Mr. Mosqueda by failing to at a minimum diagnose Mr. Mosqueda with prediabetes as the clinical evidence of a April 8, 2013 FPG of 115 mg/dL, which is 15% higher than the ADA's prediabetes diagnostic criteria of >100 mg/dL, as

*Mosqueda v. Georgia Department of Corrections et al.*

well as the symptoms of diabetes noted in Mr. Mosqueda's medical records, required such a diagnosis and subsequent treatment.

172.

Dr. Fowlkes departed from the standard of care in the care and treatment of Mr. Mosqueda by failing to order follow-up testing, including but not limited to the use of an HbA1c test, after either the April 29, 2013 FPG of 178 mg/dL, or the April 8, 2013 FPG of 115 mg/dL, or the June 17, 2013 FPG of 118 mg/dL or upon his being informed of and/or observing the symptoms of diabetes noted in Mr. Mosqueda's medical records in light of the above-referenced glucose tests.

173.

Dr. Fowlkes departed from the standard of care in the care and treatment of Mr. Mosqueda by failing to order follow up testing or take other action based on the elevated blood glucose levels and other symptoms of diabetes noted in Mr. Mosqueda's medical records.

174.

Dr. Fowlkes departed from the standard of care in the care and treatment of Mr. Mosqueda by failing to place Mr. Mosqueda in the CIC for diabetes mellitus.

175.

*Mosqueda v. Georgia Department of Corrections et al.*

Nurse Jarrett departed from the standard of care in the care and treatment of Mr. Mosqueda by inexplicably checking the "none" box regarding "abnormal lab results" as Mr. Mosqueda's April 8, 2013 blood test showed an abnormal result for FGI of 115 mg/dL and the lab results themselves stated that such a result was "H" (meaning "high") and further noted the normal range is 65-99 mg/dL.

176.

Nurse Jarrett departed from the standard of care in the care and treatment of Mr. Mosqueda by failing to order follow up testing or take other action based on the elevated blood glucose levels and other symptoms of diabetes in Mr. Mosqueda's medical records.

177.

Dr. Moody departed from the standard of care in the care and treatment of Mr. Mosqueda by failing to order follow up testing or take other action based on the elevated blood glucose levels and other symptoms of diabetes in Mr. Mosqueda's medical records.

178.

Dr. Moody departed from the standard of care in the care and treatment of Mr. Mosqueda by failing to place Mr. Mosqueda in the CIC for diabetes mellitus.

*Mosqueda v. Georgia Department of Corrections et al.*

179.

Defendant Hill departed from the standard of care in the care and treatment of Mr. Mosqueda by failing to order follow up testing or take other action based on the elevated blood glucose levels and other symptoms of diabetes in Mr. Mosqueda's medical records.

180.

Defendant Hill departed from the standard of care in the care and treatment of Mr. Mosqueda by failing to place Mr. Mosqueda in the CIC for diabetes mellitus.

181.

Defendant Hill departed from the standard of care in the care and treatment of Mr. Mosqueda by failing to provide medical treatment as Mosqueda's condition deteriorated during the months he was at Hays State Prison and specifically failing to provide medical treatment to Mosqueda when he was in state of severe medical emergency from approximately December 28 or 29th, 2013 until he was found semi-conscious on January 2, 2014.

182.

Defendant Hill departed from the standard of care in the care and treatment of Mr. Mosqueda by failing to respond to urgent telephone calls from Hays State

Prison made at approximately 12:30 P.M. (according to the medical records) on January 2, 2014 regarding Mr. Mosqueda's emergency medical condition.

183.

Defendant Wright departed from the standard of care in the care and treatment of Mr. Mosqueda by sending Mr. Mosqueda back to his isolation cell instead of to Redmond Regional Medical center via EMS after Defendant Wright examined Mr. Mosqueda at 11:20 A.M. on January 2, 2014.

184.

All nurses assigned to sick call rounds and all doctors assigned to perform rounds in the isolation cells area where Mr. Mosqueda was housed at Hays State Prison departed from the standard of care in the care and treatment of Mr. Mosqueda by failing to monitor Mr. Mosqueda's condition as it deteriorated during the months he was at Hays State Prison and specifically failing to provide any monitoring or medical assistance or care to Mr. Mosqueda when he was in a state of severe medical emergency from approximately December 28th or 29th, 2013.

185.

All of the aforementioned departures from the standard of care were breaches of the duties owed by the Mosqueda Medical Personnel to Mr.

*Mosqueda v. Georgia Department of Corrections et al.*

Mosqueda.

186.

Mr. Mosqueda's blood glucose level of 1472 mg/dL at the time of his hospitalization at Redmond Regional Medical Center is indicative of life threatening acute hyperglycemia.

187.

Mr. Mosqueda perished because of his undiagnosed and uncontrolled diabetes mellitus, resultant acute hyperglycemia and hypovolemia and complications resulting from same.

188.

Dr. Fowlkes, Dr. Moody, Defendant Hill, Nurse Jarrett and Defendant Wright proximately caused and significantly contributed to the death of Mr. Mosqueda and Mr. Mosqueda would not have died had Dr. Fowlkes, Dr. Moody, Defendant Hill, Nurse Jarrett and Defendant Wright complied with the applicable standard of care.

189.

At all times relevant hereto, the acts and omissions of the Mosqueda Medical Personnel related to the medical treatment and care of Mr. Mosqueda were committed within the scope of the Mosqueda Medical Personnel's

*Mosqueda v. Georgia Department of Corrections et al.*

employment with the State Defendants.

190.

The State Defendants are vicariously liable, via respondeat superior, for any negligent acts and omissions, including but not limited to medical malpractice and wrongful death, of the Mosqueda Medical Personnel committed within the scope of their employment with the State Defendants.

191.

The breaches of SOPs by the Mosqueda Medical Personnel are evidence of the negligence and recklessness of each and every one of the Mosqueda Medical Personnel.

192.

Defendants Radford, Bridges, Braddy, Burgess, Davidson, McNabb, McCurry, and White, the Isolation Unit Guards, were each assigned to guard duty or supervision duty in Mosqueda's D-2 isolation cell block from December 29, 2013 until January 2, 2014.

193.

The Isolation Unit Guards owed a duty to Mr. Mosqueda to monitor Mr. Mosqueda for the onset of emergency medical conditions such as that suffered by Mr. Mosqueda in the four to five days leading up to his death and a further

*Mosqueda v. Georgia Department of Corrections et al.*

duty to summon or otherwise notify Hays State Prison medical personnel when an inmate is experiencing a medical emergency.

194.

As outlined herein, the Isolation Unit Guards breached their duties by failing to adequately monitor Mr. Mosqueda's ongoing, obvious, and life threatening medical problems.  The Isolation Unit Guards further breached their duties by failing to summon or otherwise notify Hays State Prison medical personnel of the existence of Mr. Mosqueda's medical emergency from at least December 29, 2013 until Mr. Mosqueda was found near-death in his isolation cell at 2:30 P.M. on January 2, 2014.

195.

Mr. Mosqueda's nausea, vomiting, pain and other symptoms of serious medical distress were obvious enough that his suffering was observed by other inmates in isolation cells near where Mr. Mosqueda was held.

196.

Mr. Mosqueda's nausea, vomiting, pain and other symptoms of serious medical distress were obvious enough that other inmates in isolation cells near where Mr. Mosqueda was held reported his suffering to the Isolation Unit Guards.

197.

The Isolation Unit Guards were in a better position to observe and monitor Mr. Mosqueda's well-being and physical condition than the inmates held in isolation cells near Mr. Mosqueda.

198.

The Isolation Unit Guards were conscious of the physical symptoms and manifestations of Mr. Mosqueda's ongoing and escalating medical emergency.

199.

Mr. Mosqueda's nausea, vomiting, pain, inability to stand, altered consciousness, and other symptoms of serious medical distress were open and obvious enough that any non-reckless individual in the position of any of the Isolation Unit Guards would have been aware of Mr. Mosqueda's serious and deteriorating medical condition.

200.

In the days leading up to his death, Mr. Mosqueda repeatedly asked medical personnel at Hays State Prison for help and for medical care.

201.

In the days leading up to his death, Mr. Mosqueda repeatedly asked the Isolation Unit Guards at Hays State Prison to get him help and medical care.

202.

In the days leading up to his death Mr. Mosqueda asked his family to contact officials at Hays State Prison in order to get help and medical care for Mr. Mosqueda.

203.

In the days leading up to his death Mr. Mosqueda's family made repeated attempts to call Defendant Crickmar and left messages for Defendant Crickmar, informing him of Mr. Mosqueda's medical distress and asking for help for Mr. Mosqueda.

204.

In the hours before his death Mr. Mosqueda continued to try to obtain help by writing a request for medical help but was physically unable to deliver the written request for help.

205.

Mr. Mosqueda was unable to deliver his written request for medical help due to the lack of working communication equipment, the lack of policies and procedures allowing for prompt communication between inmates in isolation unit cells, and the lack of Spanish language interpreters or policies and procedures requiring the hiring of adequate numbers of bilingual personnel at

*Mosqueda v. Georgia Department of Corrections et al.*

Hays State Prison.

206.

Soon after Mr. Mosqueda's death his written plea for medical help was found by agents of the Georgia Department of Corrections and in an apparent attempt to cover up Mr. Mosqueda's death the plea for help was reported as a suicide note.

207.

To the extent that the false reporting of the written plea for help was not caused by an effort to cover up the cause of Mr. Mosqueda's death it was clear evidence of the utter failure of Defendant Crickmar and Defendant Hill to provide staff capable of understanding and communicating Mr. Mosqueda's reports of his suffering and deteriorating health.

208.

As a result of the aforementioned breaches and as the evidence may further show, the Isolation Unit Guards were negligent and reckless in regards to their conduct towards Mr. Mosqueda and their duties as officers.

209.

The breaches of the duties of the Isolation Unit Guards, as well as the herein alleged reckless misconduct regarding the inexcusable failure to summon

*Mosqueda v. Georgia Department of Corrections et al.*

medical help for Mr. Mosqueda in the face of his obvious and serious medical distress are severe and demonstrate recklessness and deliberate indifference to Mr. Mosqueda's obvious and serious medical distress.

### 210.

The manifold breaches of the GDOC SOPs identified herein above as occurring during the existence of Mr. Mosqueda's medical emergency and otherwise as the evidence may show are substantial evidence of the negligence, recklessness, and deliberate indifference of each and every one of the Isolation Unit Guards.

### 211.

At all times relevant hereto, the acts and omissions of the Isolation Unit Guards related to the guarding and monitoring and care of Mr. Mosqueda were committed within the scope of the Isolation Unit Guards' employment with the GDOC.

### 212.

The GDOC is vicariously liable, via respondeat superior, for the negligent acts and omissions, including but not limited to wrongful death, of the Isolation Unit Guards committed within the scope of their employment with the GDOC.

### 213.

The GDOC is also independently liable via its own institutional negligence which caused the death of Mr. Mosqueda in violation of the GDOC's statutory duties to provide medical care to those in the GDOC's custody.

214.

The unreasonable risk of death and danger created by the ongoing breaches of the Hays State Prison SOPs was reasonably foreseeable to the GDOC and Mr. Mosqueda's death as a result of such ongoing breaches was reasonably foreseeable by the GDOC.

215.

The unreasonable risk of death and danger created by the ongoing breaches of the Hays State Prison SOPs were reasonably foreseeable to the State Defendants and Mr. Mosqueda's death as a result was reasonably foreseeable by the State Defendants.

216.

Prior to the time of Mr. Mosqueda's death, the dangers and unreasonable risk of death created by the failure to treat Mr. Mosqueda's uncontrolled diabetes mellitus was an open and obvious danger to all Defendants and Mr. Mosqueda's death as a result of such uncontrolled diabetes mellitus was reasonably foreseeable by the Defendants.

*Mosqueda v. Georgia Department of Corrections et al.*

217.

Prior to the time of Mr. Mosqueda's death, the dangers and unreasonable risk of death created by the failure to treat Mr. Mosqueda's medical emergency was an open and obvious danger to all Defendants and Mr. Mosqueda's death as a result of the failure to provide adequate treatment during his medical emergency was reasonably foreseeable by the Defendants.

218.

Such conduct demonstrates an entire want of care, conscious indifference to the consequences of the Defendants' actions and is further evidence of recklessness and wantonness which authorizes the imposition of punitive damages against the State Defendants (under state law) and the Individual Defendants (under federal law).

219.

As the Isolation Unit Guards' employer, Defendant GDOC is responsible for all of the negligent acts, negligence per se, recklessness, entire want of care and breach of duties committed by the Isolation Unit Guards within the scope of their employment with GDOC.

220.

*Mosqueda v. Georgia Department of Corrections et al.*

As the Mosqueda Medical Personnel' employers, the State Defendants are responsible for all of the negligent acts, negligence per se, recklessness, entire want of care and breach of duties committed by the Mosqueda Medical Personnel within the scope of their employment with the State Defendants.

221.

As a direct and proximate result of the Defendants' negligence, negligence per se, recklessness, deliberate indifference, entire want of care and a breach of duties owed to Mr. Mosqueda, Mr. Mosqueda perished and as such the State Defendants are liable to Mrs. Mosqueda for the damages authorized by law for Mr. Mosqueda's wrongful death.

222.

At the time of his death, Mr. Mosqueda was married to Mrs. Mosqueda and had many children and grandchildren. Mr. Mosqueda had ongoing and close relationships with most of his children and grandchildren.

223.

In determining the value of Mr. Mosqueda's life, the jury may consider his relationships that existed when he died, including his familial relationships, as well as living conditions, family circumstances, pecuniary loss, economic damages and loss (including any benefits to be received), mental anguish,

emotional pain and suffering, loss of society, loss of companionship, loss of comfort, loss of protection, loss of parental care, loss of advice, loss of counsel, loss of training, loss of guidance, loss of education and loss of filial care. The standard for measuring such damages is the enlightened conscience of impartial jurors.

224.

Mrs. Mosqueda demands judgment against the State Defendants for her wrongful death claims in an amount to be determined by the jury, including economic and non-economic damages, compensatory damages, plus costs, attorney's fees and pre-judgment and post-judgment interest as provided by law.

## COUNT II – SURVIVAL ACTION
## (AGAINST THE STATE DEFENDANTS ONLY)

225.

Plaintiff Armando Mosqueda, as representative of Mr. Mosqueda's Estate, re-alleges and incorporates herein by reference Paragraphs One (1) through Two Hundred and Twenty-Four (224) as if fully set forth herein.

226.

Defendants' conduct as alleged herein demonstrates a failure to use reasonable care, negligence, negligence per se, recklessness and an entire want

*Mosqueda v. Georgia Department of Corrections et al.*

of care and a breach of duties owed to Mr. Mosqueda, such that Mr. Mosqueda perished while in the custody and care of the GDOC from an avoidable death due to uncontrolled diabetes mellitus and suffered from pre-death anxiety, fear, frustration at the lack of medical care, and substantial conscious pain and suffering until his untimely death.

227.

As the Isolation Unit Guards' employer, Defendant GDOC is responsible for all of the negligent acts, negligence per se, recklessness, entire want of care and breach of duties committed by the Isolation Unit Guards within the scope of their employment with GDOC.

228.

As Defendant Crickmar's employer, Defendant GDOC is responsible for all of the negligent acts, negligence per se, recklessness, entire want of care and breach of duties committed by Defendant Crickmar within the scope of his employment with GDOC.

229.

As the Mosqueda Medical Personnel' employers, the State Defendants are responsible for all of the negligent acts, negligence per se, recklessness, entire

want of care and breach of duties committed by the Mosqueda Medical Personnel within the scope of their employment with the State Defendants.

230.

As a direct and proximate result of Defendants' negligence, negligence per se, recklessness, entire want of care and breach of duties owed to Mr. Mosqueda, Mr. Mosqueda perished and the Estate of Mr. Mosqueda has incurred funeral expenses and other expenses and other damages (including but not limited to Mr. Mosqueda's pre-death pain and suffering during the period Mr. Mosqueda was in GDOC custody) that are recoverable from the State Defendants.

231.

Plaintiff Armando Mosqueda, on behalf of the Estate of Mr. Mosqueda, demands judgment against the State Defendants, in a total amount to be determined by the enlightened conscious of the jury, including but not limited to damages for the following:

(a) Compensatory damages for the anxiety, fear, and frustration with the lack of care experienced by Mr. Mosqueda during the period of his incarceration that contributed to and led to his death in the early morning hours of January 3, 2014;

*Mosqueda v. Georgia Department of Corrections et al.*

(b) Compensatory damages for all components of the mental and physical pain and suffering endured by Mr. Mosqueda during the period of his incarceration that contributed to and led to his death as a result of the failure to treat Mr. Mosqueda's undiagnosed diabetes mellitus;

(c) Special damages for the funeral and burial expenses and other expenses.

## COUNT III – 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
## (AGAINST INDIVIDUAL DEFENDANTS ONLY)

### 232.

Plaintiffs re-allege and incorporate herein by reference Paragraphs One (1) through Two Hundred and Thirty-One (231) as though fully set forth.

### 233.

At all times relevant hereto, the Individual Defendants, including Defendant Crickmar, Defendant Hill, Defendant Wright and the Isolation Unit Guards, were acting under color of law.

### 234.

Mr. Mosqueda's uncontrolled diabetes mellitus, and the complications arising therefrom, demonstrated a serious medical need.

### 235.

*Mosqueda v. Georgia Department of Corrections et al.*

Mr. Mosqueda's rapidly deteriorating physical and mental condition, as began at latest on December 29, 2013 with the onset of Mr. Mosqueda's open and obvious nausea, vomiting, weakness, inability to stand, pain, dehydration, and altered consciousness, demonstrated a serious medical need.

236.

Mr. Mosqueda has a right under the Eight Amendment to be free from conduct exhibiting deliberate indifference to his serious medical needs by Defendant Crickmar, Defendant Hill, Defendant Wright and the Isolation Unit Guards.

237.

The Isolation Unit Guards recklessly and consciously ignored the existence of Mr. Mosqueda's medical emergency from at latest December 29, 2013 until January 2, 2014, despite the open and obvious signs of extreme medical distress which any reasonable observer of Mr. Mosqueda could see for multiple days and prior to December 29, 2013.

238.

The Isolation Unit Guards' deliberate refusal to report and obtain help regarding the open and obvious danger to Mr. Mosqueda's life that was visible for approximately 72-120 hours prior to Mr. Mosqueda's being sent to Redmond

*Mosqueda v. Georgia Department of Corrections et al.*

Regional Medical Center demonstrates deliberate indifference to the serious medical needs of Mr. Mosqueda.

239.

Defendant Hill and Defendant Wright were deliberately indifferent to the existence of Mr. Mosqueda's medical emergency from at least December 29, 2013 until January 2, 2014, and previous to December 29, 2013 as the evidence may show, despite the open and obvious signs of extreme emergency medical distress which any observer of Mr. Mosqueda could see for multiple days and prior to December 29, 2013.

240.

Defendant Wright was further deliberately indifferent to Mr. Mosqueda's obviously urgent medical condition when she failed to obtain emergency assistance for Mr. Mosqueda after she interacted with him on the morning of January 2, 2014, but instead sent him back to his isolation cell with instructions to put in a sick call request if he wanted help even though she knew Mr. Mosqueda did not have a way of communicating such a sick call request.

241.

The Isolation Unit Guards, Defendant Wright, and Defendant Hill were deliberately indifferent to Mr. Mosqueda's obvious need for immediate medical

*Mosqueda v. Georgia Department of Corrections et al.*

attention in that they delayed providing him medical care when they observed symptoms of a life-threatening situation in which it was apparent that delay would exacerbate Mr. Mosqueda's problems.

242.

The manifold breaches of the GDOC SOPs as a result of the Individual Defendants' misconduct identified herein are substantial evidence of the deliberate indifference of the Individual Defendants to the serious medical needs of Mr. Mosqueda.

243.

Defendant Crickmar, Defendant Hill, Defendant Wright and the Isolation Unit Guards have a duty pursuant to the Eighth Amendment to provide the constitutionally required adequate level of medical care and treatment, including emergency medical care and treatment, for inmates under their custody, control, care or supervision.

244.

Defendant Crickmar, Defendant Hill, Defendant Wright and the Isolation Unit Guards have a duty pursuant to the Eighth Amendment to not engage in deliberate indifference to the serious medical needs of inmates under their custody, control, care or supervision.

*Mosqueda v. Georgia Department of Corrections et al.*

245.

Defendant Crickmar and Defendant Hill are required by the Eighth Amendment to create, utilize or otherwise enforce policies and procedures that are not deliberately indifferent to the serious medical needs of inmates at Hays State Prison.

246.

Defendant Crickmar is required by the Eighth Amendment to train and supervise the correctional and medical staff regarding operational policies and procedures designed to avoid deliberate indifference to the serious medical needs of inmates at Hays State Prison.

247.

Defendant Hill is required by the Eighth Amendment to train and supervise the correctional and medical staff regarding operational policies and procedures designed to avoid deliberate indifference to the serious medical needs of inmates at Hays State Prison.

248.

Defendant Crickmar's failure to adequately train and supervise his subordinates, including Defendant Hill, Defendant Wright and Isolation Unit Guards regarding the detection and treatment of emergency medical conditions

*Mosqueda v. Georgia Department of Corrections et al.*

in inmates in isolation cells, demonstrates deliberate indifference to the rights of Mr. Mosqueda and other inmates at Hays State Prison.

249.

Defendant Crickmar's failure to act upon information provided to him by Mr. Mosqueda's relatives pleading for medical care and treatment to be provided to Mr. Mosqueda is a demonstration of deliberate indifference to the serious medical needs of Mr. Mosqueda.

250.

Defendant Crickmar's failure act upon information provided to him by Hays State Prison personnel regarding the existence of Mr. Mosqueda's medical emergency is a demonstration of deliberate indifference to the serious medical needs of Mr. Mosqueda.

251.

Defendant Hill's failure to adequately train and supervise her subordinates, including the all Hays State Prison medical personnel, regarding the detection and treatment of emergency medical conditions in inmates in isolation cells, demonstrates a reckless or callous or deliberate indifference to the rights of the inmates at Hays State Prison to be free from deliberate indifference to their serious medical needs.

*Mosqueda v. Georgia Department of Corrections et al.*

252.

Defendant Crickmar's failure to adequately train and supervise his subordinates, including medical personnel employed at Hays State Prison and Isolation Unit Guards regarding the detection and treatment of uncontrolled diabetes mellitus in inmates in isolation cells, demonstrates a reckless or callous or deliberate indifference to the rights of the inmates at Hays State Prison to be free from deliberate indifference to their serious medical needs.

253.

Defendant Crickmar's failure to adequately train and supervise his subordinates, including medical personnel employed at Hays State Prison and Isolation Unit Guards, regarding methods of communicating with Spanish speaking prisoners about their medical conditions and needs, or otherwise put in place technological or staffing solutions to address the need for medical staff to communicate with Spanish speaking prisoners about medical conditions and needs demonstrates a reckless or callous or deliberate indifference to the rights of the inmates at Hays State Prison to be free from deliberate indifference to their serious medical needs.

254.

Defendant Crickmar's and Defendant Hill's failure to adequately train and
*Mosqueda v. Georgia Department of Corrections et al.*

supervise their subordinates, including Defendant Wright and the other Hays State Prison medical staff, regarding methods of communicating with Spanish speaking prisoners about their medical conditions and needs, or otherwise put in place technological or staffing solutions to address the need for medical staff to communicate with Spanish speaking prisoners about medical conditions and needs demonstrates a reckless or callous or deliberate indifference to the rights of the inmates at Hays State Prison to be free from deliberate indifference to their serious medical needs.

255.

Defendant Crickmar's and Defendant Hill's failure to adequately train and supervise their subordinates, including the all Hays State Prison medical personnel, regarding the detection and treatment of uncontrolled diabetes mellitus in inmates in isolation cells, demonstrates a reckless or callous or deliberate indifference to the rights of the inmates at Hays State Prison to be free from deliberate indifference to their serious medical needs.

256.

Defendant Crickmar failed to protect Mr. Mosqueda while Mr. Mosqueda was in his custody at Hays State Prison.

257.

*Mosqueda v. Georgia Department of Corrections et al.*

Defendant Hill failed to protect Mr. Mosqueda while Mr. Mosqueda was under her medical care and treatment at Hays State Prison.

258.

The Individual Defendants' misconduct as alleged herein resulted in the unnecessary and wanton infliction of pain and suffering upon Mr. Mosqueda during the period Mr. Mosqueda was in GDOC custody.

259.

None of the Individual Defendants employed at Hays State Prison responded reasonably to knowledge regarding the existence of Mr. Mosqueda's medical emergency or the knowledge regarding the clinical evidence of the existence of diabetes mellitus.

260.

Defendant Hill failed to protect Mr. Mosqueda while Mr. Mosqueda was under her medical care and treatment at Hays State Prison.

261.

Defendant Crickmar was deliberately indifferent to, endorsed or tacitly authorized the herein alleged violations of Mr. Mosqueda's constitutional rights regarding medical treatment and care, as shown by the fact that no policy or procedure changes occurred subsequent to the time of Mr. Mosqueda's death

*Mosqueda v. Georgia Department of Corrections et al.*

regarding the treatment of uncontrolled diabetes mellitus in inmates at Hays State Prison or the detection and treatment of emergency medical conditions in inmates.

262.

As a result of the above described policies and customs and training and supervision, Hays State Prison staff, including Defendant Hill, Defendant Wright and the Isolation Unit Guards, believed that their failures to properly monitor and care for inmates would not be monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.   This belief was evidenced by the fact that on the day of Mr. Mosqueda's death GDOC investigators had already wrongfully stated that Mr. Mosqueda had left a suicide note in his cell.  This belief was further evidenced by the fact that Defendant Crickmar found that Mr. Mosqueda's death was handled appropriately despite the evidence that Mr. Mosqueda's death was avoidable and was caused by Defendants' actions and failure to act.

263.

Defendant Crickmar had actual or constructive knowledge that his subordinates were engaged in behavior that posed a pervasive and unjustified risk of constitutional, physical and mental injury to inmates such as Mr.

Mosqueda, such behavior including the unreasonable failure to provide monitoring and medical care to inmates with uncontrolled diabetes mellitus and/or emergency medical conditions.

264.

Defendant Crickmar had actual or constructive knowledge that his failure to train or supervise his subordinates as alleged above and his policies and customs endorsing, ratifying, tacitly accepting and/or tolerating the unreasonable failure to provide medical care to inmates with uncontrolled diabetes mellitus and/or emergency medical conditions posed a pervasive and unjustified risk of injuries such as those suffered by Mr. Mosqueda.

265.

The above described policies and customs and training and supervision practices demonstrate deliberate indifference on the part of Defendant Crickmar to the constitutional rights of persons confined in at Hays State Prison, and were a proximate cause of the violations of Mr. Mosqueda's constitutional rights alleged herein and damages to Mr. Mosqueda (and Plaintiffs) as a result of such rights violations, including but not limited to Mr. Mosqueda's escalating illness and death.

266.

*Mosqueda v. Georgia Department of Corrections et al.*

The above described policies and customs and training and supervision practices demonstrate a reckless disregard or deliberate indifference on the part of Defendant Hill to the constitutional rights of persons confined in at Hays State Prison to medical care and treatment, and were a proximate cause of the violations of Mr. Mosqueda's constitutional rights alleged herein and damages to Mr. Mosqueda (and Plaintiffs) as a result of such rights violations, including but not limited to Mr. Mosqueda's escalating illness and death.

267.

Plaintiffs claim damages for the unconstitutional misconduct by the Individual Defendants as outlined herein and the pain, anguish and death of Mr. Mosqueda which occurred as a result of such misconduct, including but not limited to the failure of all Individual Defendants to provide for medical treatment or help regarding Mr. Mosqueda's medical emergency prior to Mr. Mosqueda's discovery in near-death condition in his isolation cell on January 2, 2014 at 2:30 P.M. by Hays State Prison correctional officers.

268.

Mr. Mosqueda incurred substantial physical, mental and emotional damages as well as death as a direct and proximate result of the deliberate indifference of Defendant Crickmar, Defendant Hill, Defendant Wright and the

*Mosqueda v. Georgia Department of Corrections et al.*

Isolation Unit Guards to the serious medical needs of Mr. Mosqueda and Plaintiffs are entitled to damages in an amount to proven at trial.

269.

Plaintiff Armando Mosqueda, on behalf of Mr. Mosqueda's estate, demands judgment against the Individual Defendants as a result of the unconstitutional conduct alleged herein, in a total amount to be determined by the enlightened conscious of the jury, including but not limited to damages for the following:

(a) Compensatory damages for the anxiety, fear, and frustration with the lack of care experienced by Mr. Mosqueda during the period of his incarceration that contributed to his death in the early morning hours of January 3, 2014;

(b) Compensatory damages for all components of the bodily injury, mental and physical pain and suffering endured by Mr. Mosqueda during the period of his incarceration that contributed to his death in the early morning hours of January 3, 2014;

(c) Damages for the violations of Mr. Mosqueda's Constitutional Rights under the Eighth and Fourteenth Amendments to the United States Constitution;

*Mosqueda v. Georgia Department of Corrections et al.*

(d) Special damages for the funeral and burial expenses and other expenses.

270.

Mrs. Mosqueda demands judgment against the Individual Defendants as a result of the unconstitutional conduct alleged herein, in a total amount to be determined by the enlightened conscious of the jury, including the full value of the life of Mr. Mosqueda, plus costs, punitive damages, attorney's fees, pre-judgment interest and post-judgment interest.

## COUNT IV – 42 U.S.C. § 1983 – DENIAL OF THE RIGHT TO EQUAL PROTECTION
## (AGAINST DEFENDANT CRICKMAR AND DEFENDANT HILL ONLY)

271.

Plaintiffs re-allege and incorporate herein by reference Paragraphs One (1) through Two Hundred and Seventy (270) as though fully set forth.

272.

At all times relevant hereto, the Individual Defendants, including Defendant Crickmar, Defendant Hill, Defendant Wright and the Isolation Unit Guards, were acting under color of law.

*Mosqueda v. Georgia Department of Corrections et al.*

273.

Mr. Mosqueda has a right under the Fourteenth Amendment to the United States Constitution to equal protection of the laws of the United States of America.

274.

Throughout the development of Mr. Mosqueda's illness, the medical personnel working at GDOC facilities noted many times in Mr. Mosqueda's medical records that Mr. Mosqueda's primary language was Spanish and that an interpreter was needed for communications with Mr. Mosqueda regarding his medical condition, symptoms and otherwise.

275.

At no time during the period Mr. Mosqueda was in GDOC custody did Defendant Crickmar or Defendant Hill provide any Spanish speaking medical personnel, a non-inmate interpreter or any technology-based solution for the use of Spanish-speaking inmates like Mr. Mosqueda to communicate with medical staff or correctional staff at GDOC facilities.

276.

The inability of medical personnel and correctional personnel to functionally communicate with Mr. Mosqueda prevented medical personnel at

*Mosqueda v. Georgia Department of Corrections et al.*

Hays State Prison from providing the constitutionally required level of monitoring for emergency conditions and from providing the constitutionally required level of medical care to Mr. Mosqueda.

277.

Mr. Mosqueda was treated disparately from a similarly-situated English-speaking inmate who had the same uncontrolled diabetes mellitus because the ability of the medical personnel working at GDOC facilities to functionally communicate with the English-speaking inmate would substantially increase the effectiveness of diagnosis and treatment of said uncontrolled diabetes mellitus in an English-speaking inmate.

278.

Mr. Mosqueda was treated disparately from a similarly-situated English-speaking inmate who had the same emergency medical condition as Mr. Mosqueda because the ability of the medical personnel and correctional personnel working at GDOC facilities to functionally communicate with the English-speaking inmate would substantially increase the effectiveness of the discovery and treatment of the English-speaking patient's emergency medical conditions by GDOC medical and correctional staff members.

279.

*Mosqueda v. Georgia Department of Corrections et al.*

Mr. Mosqueda suffered from the disparate impact of substantially reduced effectiveness in his medical care and treatment, below the constitutionally required level of medical care. This reduced effectiveness in providing care and Mr. Mosqueda's resultant escalating pain and suffering were caused by the policies and procedures of Defendant Crickmar and Defendant Hill that failed to provide Spanish speaking medical personnel, a non-inmate interpreter or otherwise facilitate functional communications between Spanish-speaking inmates and GDOC medical staff or correctional staff.

280.

The fact that Spanish speaking inmates at GDOC facilities receive different and less effective medical care because of the lack of functional communication with GDOC medical staff or correctional staff is well known by Defendant Crickmar and Defendant Hill.

281.

It is the responsibility of Defendant Crickmar and Defendant Hill to ensure that functional communication is possible between inmates who primarily speak Spanish and medical staff at Hays State Prison.

282.

Defendant Crickmar and Defendant Hill failed and refused to create or

*Mosqueda v. Georgia Department of Corrections et al.*

implement policies or procedures requiring the use of Spanish speaking medical personnel or licensed, non-inmate interpreters so as to allow functional communication between Spanish-speaking inmates like Mr. Mosqueda and GDOC medical staff and correctional staff.

283.

The failure to facilitate functional communication between Mr. Mosqueda and Hays State Prison medical and correctional staff was a violation of Mr. Mosqueda's right to equal protection of the laws pursuant to the Fourteenth Amendment to the United States Constitution.

284.

The violation of Mr. Mosqueda's equal protection rights as alleged herein was a proximate cause of the inexcusable and tragic failure of the Defendants to perform even a minimal level of medical care and treatment of Mr. Mosqueda, and such lack of care resulted in Mr. Mosqueda's avoidable death and substantial pre-death pain and suffering and entitled Plaintiffs to damages for such loss.

285.

The above described policies and customs and training and supervision practices demonstrate a reckless disregard or deliberate indifference on the part

*Mosqueda v. Georgia Department of Corrections et al.*

of Defendant Crickmar to the constitutional rights of Spanish-speaking persons confined at Hays State Prison, and were a proximate cause of the violations of Mr. Mosqueda's constitutional rights alleged herein and damages to Mr. Mosqueda (and Plaintiffs) as a result of such rights violations, including but not limited to Mr. Mosqueda's immense and escalating pain and suffering and then horrific death.

286.

The above described policies and customs and training and supervision practices demonstrate a reckless disregard or deliberate indifference on the part of Defendant Hill to the constitutional rights of Spanish-speaking persons confined at Hays State Prison, and were a proximate cause of the violations of Mr. Mosqueda's constitutional rights alleged herein and damages to Mr. Mosqueda (and Plaintiffs) as a result of such rights violations, including but not limited to Mr. Mosqueda's immense and escalating pain and suffering and then horrific death.

287.

Plaintiff Armando Mosqueda, on behalf of Mr. Mosqueda's estate, demands judgment against Defendant Crickmar and Defendant Hill as a result of the unconstitutional rights violations alleged herein, in a total amount to be

determined by the enlightened conscious of the jury, including but not limited to damages for the following:

(a) Compensatory damages for the anxiety, fear, and frustration during the period of Mr. Mosqueda's incarceration at Hays State Prison that led to his death on the morning of January 3, 2014;

(b) Compensatory damages for all components of the mental and physical pain and suffering endured by Mr. Mosqueda during the period of Mr. Mosqueda's incarceration at Hays State Prison that led to his death on the morning of January 3, 2014;

(c) Special damages for the funeral and burial expenses and other expenses.

288.

Mrs. Mosqueda demands judgment against the Individual Defendants as a result of the unconstitutional conduct alleged herein, in a total amount to be determined by the enlightened conscious of the jury, including the full value of the life of Mr. Mosqueda, plus costs, attorney's fees, pre-judgment interest and post-judgment interest.

## <u>COUNT V – ATTORNEYS FEES</u>
## <u>(AGAINST ALL DEFENDANTS)</u>

289.

Plaintiffs re-allege and incorporate herein by reference Paragraphs One (1) through Two Hundred and Ninety (290) as if fully set forth herein.

290.

The State Defendants' reckless conduct and deliberate indifference to Mr. Mosqueda's constitutional rights constitutes bad faith and stubborn litigiousness sufficient to award attorney's fees under O.C.G.A. §13-6-11 and other Georgia statutes and case law, and the State Defendants are liable to Plaintiffs for all expenses of litigation, including reasonable attorney's fees and other expenses incurred in bringing and prosecuting this action.

291.

The Individual Defendants' clear violations of Mr. Mosqueda's constitutional rights as alleged herein authorize an award of expenses of litigation, including reasonable attorney's fees and other expenses incurred in bringing and prosecuting this action pursuant to Section 1988.

292.

*Mosqueda v. Georgia Department of Corrections et al.*

Accordingly, Plaintiffs are entitled to recover their attorneys' fees and expenses of litigation in an amount to be proven at trial pursuant to applicable federal and state case law, O.C.G.A. § 13-6-11 and 42 U.S.C. § 1988 and all other relevant statutory and case law.

## COUNT VI – PUNITIVE DAMAGES
## (AGAINST ALL DEFENDANTS)

293.

Plaintiffs re-allege and incorporate herein by reference Paragraphs One (1) through Two Hundred and Ninety-Two (292) as if fully set forth herein.

294.

Defendants allowed, condoned, participated in or otherwise tolerated deliberate indifference to Mr. Mosqueda's obvious and serious medical needs both during the approximately 72-120 hours from the emergence of Mr. Mosqueda's medical emergency until the time of his death.

295.

Defendants' actions amounted to an entire want of care which would raise the presumption of conscious indifference to the consequences of their actions sufficient for an award of punitive damages under O.C.G.A. § 51-12-5.1 and

case law interpreting same (for the State Defendants) and under Section 1983 and case law interpreting same (for the Individual Defendants).

296.

Such conduct and Defendants' additional conduct as the evidence may show demonstrates an entire want of care and conscious indifference to the consequences of Defendants' actions and is further evidence of recklessness which authorizes the imposition of punitive damages.

297.

Plaintiffs seek to recover punitive damages pursuant to O.C.G.A. § 51-12-5.1 and case law interpreting same (for the State Defendants) and Section 1983 and case law interpreting same (for the Individual Defendants) in such an amount as the jury determines to be just and appropriate to fully and completely deter Defendants from committing the tortious acts and omissions and/or constitutional violations complained of in this Complaint as well as attorney's fees and costs.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs pray that this Court issue the following relief:

a.  That process and summons issue in accordance with the law;

b.  That the Court award Plaintiff Mrs. Mosqueda compensatory and
    *Mosqueda v. Georgia Department of Corrections et al.*

Page **94** of **97**

general damages in an amount of not less than the full value of Mr.
Mosqueda's life as to be determined by the jury against all the State
Defendants, jointly and severally, pursuant to the state law claims;

c.  That the Court award Plaintiff Armando Mosqueda compensatory
and general damages in an amount of not less than the entirety of
Mr. Mosqueda's physical, mental and emotional pain, suffering
and trauma as to be determined by the jury against the State
Defendants, jointly and severally, pursuant to the state law claims;

d.  Pursuant to O.C.G.A. § 9-11-8, Plaintiffs demand judgment in
excess of $10,000.00 pursuant to the state law claims;

e.  That the Court award Plaintiff Mrs. Mosqueda compensatory and
general damages in an amount of not less than the full value of Mr.
Mosqueda's life as to be determined by the jury against the
Defendant Hill, Defendant Wright, Isolation Unit Guards and
Defendant Crickmar, jointly and severally, pursuant to the Section
1983 claims;

f.  That the Court award Plaintiff Armando Mosqueda compensatory
and general damages in an amount of not less than the entirety of
Mr. Mosqueda's physical, mental and emotional pain, suffering

*Mosqueda v. Georgia Department of Corrections et al.*

and trauma as to be determined by the jury against Defendant Hill, Defendant Wright, Isolation Unit Guards and Defendant Crickmar, jointly and severally, pursuant to the Section 1983 claims;

g.  That the Court award each Plaintiff respectively punitive damages in an amount as to be determined by the enlightened conscience of the jury against all Defendants, jointly and severally;

h.  That the Court award costs of this action, including attorneys' fees, to Plaintiffs, pursuant to U.S.C. § 1988, the laws of the State of Georgia and other applicable laws regarding such awards against Defendant Hill, Defendant Wright, Isolation Unit Guards and Defendant Crickmar, jointly and severally;

i.  That the Court award costs of this action, including attorneys' fees, to Plaintiffs, pursuant to the laws of the State of Georgia and other applicable laws regarding such awards against the State Defendants, jointly and severally;

j.  That pre and post judgment interest be awarded to Plaintiffs under federal and state statutes and case law;

k.  That the Court award Plaintiffs such other and further relief as it deems just and necessary; and

*Mosqueda v. Georgia Department of Corrections et al.*

l.   That Plaintiffs be granted a trial by jury.

This 4th day of January, 2016.

Respectfully submitted,

**HORSLEY BEGNAUD LLC**

s/ Nathanael A. Horsley
**Nathanael A. Horsley**
Georgia State Bar No. 367832
nhorsley@gacivilrights.com
Counsel for Plaintiffs

s/ Mark Begnaud
**Mark Begnaud**
Georgia State Bar No. 217641
mbegnaud@gacivilrights.com

750 Hammond Dr.
Building 12 Suite 300
Atlanta, GA 30328
Phone: 770-765-5559
Fax:      404-602-0018

*Mosqueda v. Georgia Department of Corrections et al.*